IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL HEIFFERON,

    Plaintiff,

vs.

THE OHIO STATE UNIVERSITY,

    Defendant.

Case No. _____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Michael Heifferon ("Plaintiff"), by and through his counsel, files his complaint against Defendant The Ohio State University ("OSU") and alleges as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1334 because Plaintiff alleges claims under federal law, specifically Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

2. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiff's claims occurred within this district.

### PRELIMINARY STATEMENT AND FACTS

3. Plaintiff brings this civil rights lawsuit under Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* because OSU had actual notice of and was deliberately indifferent to the fact that Richard Strauss, M.D., ("Strauss") an OSU employee, tenured faculty member, and the Associate Director of OSU's sports medicine program, sexually assaulted and abused hundreds of male OSU student-athletes and trainers and other

male OSU undergraduates for over nineteen years. Moreover, OSU officials aided, abetted, and actively concealed Strauss' sexual predation of OSU's students.

4. OSU employed Strauss from approximately 1978 through 1998. Strauss served in various positions at OSU.

5. OSU designated Strauss as a team physician for many sports from approximately July 1, 1981 through June 30, 1995. Student-athletes and trainers could not avoid him if they wanted medical treatment.

6. Dr. Strauss also worked as a physician at OSU's student health center from approximately 1991 to 1995.

7. As a threshold matter, Plaintiff openly admits he consented to receiving medical treatment while a student-athlete trainer at OSU. Plaintiff, however, never invited or consented to Strauss touching him beyond what was medically necessary and appropriate. For numerous reasons described below, Plaintiff was not in a position to judge Strauss' clinical practices or to avoid him when seeking medical care.

8. Strauss abused Plaintiff when treating him for injuries, either through the OSU Athletics Department or OSU's Sports Medicine Clinic at Student Health Services. He also sexually assaulted student-athletes and trainers in the locker rooms and showers of Larkins Hall, where many teams were based, including wrestling, swimming and gymnastics.

9. Plaintiff reported Strauss' examination methods to team trainers – particularly head athletic trainer Billy Hill. While precise responses are unknown, the gist was almost always: it was not a big deal.

10. OSU concealed, intentionally ignored, or disregarded repeated reports and other widely known information that indicated Strauss was a threat to male patients.

11. In April 2018, OSU authorized an independent investigation into whether Strauss had sexually abused student-athletes, and if so, the extent to which OSU knew about Strauss' conduct. On May 19, 2019, Perkins Coie, LLP issued findings from its independent investigation into Strauss' acts of sexual abuse and the degree to which OSU knew of or permitted Strauss to abuse OSU students. Titled, *Sexual Abuse Committed by Dr. Richard Strauss at the Ohio State University,* issued on May 15, 2019 (the "Report" attached as Exhibit A), the Report substantiates many of the facts pled in this Complaint and the previous consolidated complaints pending before this Court.

12. As categorized by the Report, Strauss abused Plaintiff and other OSU students in one or more of the following ways:

   a. In the context of medical examination that caused the student to reach ejaculation or nearly reach ejaculation;

   b. In the context of a medical examination that caused the student to reach erection or near erection;

   c. Unnecessary fondling or groping of the genitals in the context of a medical examination, or medically unnecessary examinations of the genitals or rectum

   d. Examination techniques that included: unnecessary nudity, excessive touching or non-genital/non-rectal areas of the student's body; inappropriate verbal commentary or sexually charged questioning; lack of medical gloves for genital examinations; unnecessarily invasive physical positions; medical treatment outside of a clinical setting; and *quid pro quo* arrangements; and

   e. Inappropriate and sexually abusive conduct outside of the examination room, including, showering alongside student-patients, loitering in student athlete's locker rooms and

engaging in voyeuristic behavior, and initiating fraternization with patients. (Report at 40).

13. Strauss committed these acts of sexual abuse and harassment consistently and on a daily basis throughout his career at OSU.

14. Strauss committed these acts of sexual abuse while an OSU faculty member.

15. Plaintiff was a student-athlete trainer for hockey and wrestling at OSU.

16. Plaintiff worked in Larkins Hall alongside Strauss.

17. Plaintiff attended OSU expecting the University would consistently provide him with a safe and supportive environment that would help him thrive.

18. Plaintiff believed that OSU would take patient/student/doctor safety one of the University's primary concern.

19. Team physicians, like Strauss, hold a special relationship of trust and confidence with the student-athletes and trainers they treat and are vital medical professionals for these sports.

20. Plaintiff trusted OSU to act in his best interest when selecting, training, and supervising the team physicians on its faculty.

21. Plaintiff trusted OSU to hire physician faculty members who would respect and honor the relationship of trust and confidence that must be present between patients and their physicians.

22. Plaintiff trusted OSU to regularly and competently evaluate the quality and integrity of the medical services Strauss provided to Plaintiff.

23. Plaintiff trusted OSU to investigate faithfully all circumstances that indicated a team physician was unfit to treat Plaintiff, whether due to acts of sexual assault/abuse or incompetence.

24. Plaintiff trusted that OSU personnel would not hide, fail to disclose, or disregard known circumstances that raised a substantial likelihood Plaintiff and other student-athletes and trainers were being sexually assaulted, abused, and harassed by Strauss and/or by conditions at Larkins Hall.

25. Plaintiff expected OSU, an esteemed institution of higher learning, to seek the truth about Strauss' conduct wherever the truth led the University.

26. Plaintiff relied on OSU to stop the rampant sexual harassment and voyeurism that student-athletes and trainers had to endure in Larkins Hall between 1978 and 1998.

27. OSU betrayed Plaintiff's trust and utterly failed to meet the legal and ethical obligations it owed to Plaintiff and other OSU students. At all times relevant to this Complaint, OSU officials with authority to institute corrective measures actively concealed, failed to disclose, and showed deliberate indifference towards circumstances that indicated Strauss was sexually assaulting and abusing male OSU students he treated.

28. Only within the past two years has Plaintiff realized that Strauss' conduct constituted sexual assault or sexual abuse.

29. Only within the past two years has Plaintiff had a reasonable basis for believing that OSU had actual knowledge of the risk Strauss presented to the OSU students her treated.

30. Only within the past two years has Plaintiff had a reasonable basis for believing OSU intentionally concealed or showed deliberate indifference to the threat Strauss posed to him.

31. Only within the past two years has the Plaintiff come to learn what OSU administrators in a position to take corrective measures knew and failed to do about the conditions in Larkins Hall.

32. Even if Plaintiff had realized more than two years ago that Strauss' conduct constituted sexual assault and sexual abuse, Plaintiff would have had no reasonable basis for alleging or concluding that OSU caused him to suffer a separate and independent harm from what Strauss had inflicted on him. Strauss harmed Plaintiff by sexually assaulting and abusing him. OSU independently harmed Plaintiff by failed to protect him from Strauss despite knowing Strauss was substantially likely to be a sexual predator. Not until within the past two years would Plaintiff's due diligence have allowed him to reasonably infer: (a) what OSU knew about Strauss while Strauss was on the faculty; or (b) what OSU did or failed to do with that information.

33. Likewise, not until within the past two years, would Plaintiff, who worked in Larkins Hall, have known: (a) the extent of OSU's institutional knowledge about the conditions in Larkins Hall; or (b) what OSU did or failed to do with that information.

## THE PARTIES

34. Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully stated here.

35. Defendant, The Ohio State University, was at all relevant times and continues to be, a public university organized and existing under the laws of the State of Ohio.

36. Defendant OSU receives, and at all times relevant times received, federal financial assistance. Defendant is therefore subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. § 1681, *et seq.*

37. Plaintiff, Michael Heifferon, is a resident of the State of Florida.

38. Plaintiff attended OSU from 1983-1987 and was enrolled during the time period of Strauss' employment.

39. Plaintiff was sexually assaulted, abused, molested and/or harassed by Strauss when treating him for injuries, either through the OSU Athletics Department or OSU's Sports Medicine Clinic at Student Health Services.

40. In 1984, Plaintiff was hit above the eye with a hockey puck while he was the athletic-trainer for the hockey team.

41. Head Athletic Trainer, Billy Hill took Plaintiff to Dr. Strauss. Strauss came into the room and gave Plaintiff an injection. Billy Hill left. Plaintiff laid on the table and fell asleep. Strauss was next to his thigh when he fell asleep. When he woke up, his zipper was down, pants were unbuttoned, and his penis was on his thigh.

42. The next day, Plaintiff was "off". Plaintiff was embarrassed by the experience.

43. In the spring of 1985, Plaintiff went to Strauss for testicular pain. Plaintiff went to Larkins Hall. Strauss cupped, stroked, and fondled Plaintiff's genitals and penis for an extended length of time, moving up and down from his genitals to the head of the penis with his bare hand. Plaintiff was diagnosed with epididymitis.

44. Plaintiff encountered Strauss under legitimate circumstances and was more likely to interpret what took place in the examination room within that framework of legitimacy.

45. Strauss placed Plaintiff in a vulnerable position, both physically and emotionally, when he was examined. Plaintiff was not psychologically predisposed to question Strauss' clinical practices.

46. Plaintiff had no standing to challenge Strauss for his medical actions due to the disparity between Strauss' medical knowledge and his.

47. Plaintiff was expressly or impliedly misled by OSU trainers, coaches, and employees in the Athletics Department into believing that Strauss' sexually abusive examination methods and statements, though intrusive, unpleasant, and embarrassing, were medically acceptable practices.

## CLAIM FOR RELIEF COUNT I:
### Violation of Title IX 20 U.S.C. § 1681(a), *et seq.*
### Heightened Risk Claim

48. Plaintiff incorporates by reference the allegations contained in all previous paragraphs as if fully stated here.

49. Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. § 1681(a), states: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. . . ."

50. Title IX is implemented through the Code of Federal Regulations. See 34 C.F.R. Part 106. 34 C.F.R. § 106.8(b) provides: ". . . A recipient shall adopt and publish grievance procedures providing for prompt and equitable resolution of student and employee complaints alleging any action which would be prohibited by this part."

51. As explained in Title IX guidance issued by the U.S. Department of Education's Office for Civil Rights, sexual harassment of students is a form of sex discrimination covered by Title IX.

52. Sexual harassment is unwelcome conduct of sexual nature, including unwelcome sexual advances, requests for sexual favors, and other verbal, nonverbal, or physical conduct of sexual nature.

53. Title IX covers all programs of a school that receives any federal financial assistance, and covers sexual harassment – including sexual assault – by school employees, students, and third parties.

54. At all relevant times, OSU received federal financial assistance and is therefore subject to Title IX.

55. Title IX required OSU to promptly investigate all allegations of sexual harassment, including sexual assault and abuse.

56. Strauss committed his unlawful acts while working for OSU as a tenured faculty member, team physician, and sports medicine physician.

57. Strauss' sexual assault, abuse, molestation, and harassment of Plaintiff – which included, among other things, fondling his genitals and fondling his penis – was sex discrimination under Title IX.

58. OSU was required to promptly investigate and address Plaintiff's and other OSU students' allegations, reports, and/or complaints of sexually abusive or harassing behavior by Strauss.

59. OSU had actual knowledge, as early as 1979, of the serial sexual assault, abuse, and molestation committed by Strauss.

60. Specifically, OSU knew about Strauss' sexual assault, abuse, and molestation through OSU personnel with authority to take corrective action to address it. Such personnel

included, but were not limited to: Athletic Directors and Assistant Athletic Directors, and Head Team Physicians and several team physicians (who were also faculty members).

61. Throughout Strauss' 20-year tenure at OSU, students, student-athletes, and coaches conveyed complaints and concerns to OSU administrators and employees about Strauss' inappropriate sexual conduct.

62. Given the magnitude of Strauss' abuse – involving students and student-athletes and trainers he evaluated and treated over two decades – it would be implausible for OSU to claim it did not know about Strauss' sexual abuse.

63. Nonetheless, OSU did nothing to address the complaints and concerns about Strauss.

64. OSU's failure to respond promptly and adequately to allegations of Strauss' abuse constitutes sex discrimination, in violation of Title IX.

65. By its acts and omissions, OSU acted with deliberate indifference to the sexual abuse and harassment that Plaintiff and other male OSU students were experiencing. OSU's deliberate indifference included, without limitation:

a. Failing to respond to allegations of Strauss' sexual assault, abuse, and molestation;

b. Failing to promptly and adequately investigate allegations of Strauss' sexual assault, abuse, and molestation;

c. Requiring OSU students and male athletes and trainers to see Strauss for annual physicals and medical treatment, despite widespread knowledge and complaints about Strauss' abuse;

d. Allowing Strauss (and other sexual predators) to roam freely in Larkins Hall;

e. Allowing Strauss to work as a physician in Student Health Services; despite widespread knowledge and complaints about Strauss' abuse;

f. Failing to adequately supervise Strauss, after learning that he posed a substantial risk to the safety of male students and student-athletes and trainers;

g. Failing to require that Strauss properly document all patient encounters;

h. Failing to take corrective action to prevent Strauss from sexually assaulting, abusing, and molesting other students; and

i. Failing to have in place an effective sexual harassment policy that allowed students to bring complaints without first having to try to resolve complaints of sexual harassment informally with the alleged abuser.

66. OSU's failure to promptly and appropriately investigate, remedy, and respond to complaints about Strauss' sexual misconduct caused Plaintiff and other male OSU students to experience further sexual harassment and/or made them liable or vulnerable to it.

67. OSU's failure to promptly and appropriately investigate, remedy, and respond to complaints about Strauss' sexual misconduct created a sexually hostile environment that effectively denied Plaintiff access to educational opportunities and benefits at OSU, including, medically appropriate medical care.

68. As a direct and proximate result of OSU's violation of Plaintiff's rights under Title IX, Plaintiff has suffered and continues to suffer emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life; were prevented and continue to be prevented from obtaining the full enjoyment of life; and have incurred various personal expenses.

## CLAIM FOR RELIEF COUNT II:
### Violation of Title IX 20 U.S.C. § 1681(a), *et seq.*
### Hostile Environment

69. Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully stated here.

70. Plaintiff, who worked out of Larkins Hall as an athletic trainer between 1983-1987, was entitled to use the athletics facilities free from sexual harassment. However, the pervading and constant sexual harassment they received within Larkins Hall created a hostile environment. The hostile environment suffered in Larkins Hall facilities was so severe, pervasive, and objectively offensive that it effectively barred Plaintiff from access to numerous educational opportunities and benefits, including, but not limited to, full use and enjoyment of practice facilities, showers, and locker rooms.

71. The sexually hostile environment inside Larkins Hall, during the aforementioned period, constituted sex discrimination in violation of Title IX.

72. Between 1978 to 1998, OSU officials in a position to implement corrective measures had actual knowledge that the Plaintiff and other male OSU student-athletes were being subjected to a sexually hostile and abusive environment inside Larkins Hall.

73. OSU owed the Plaintiff a duty to investigate and remedy the conditions that made Larkins Hall a sexually hostile and abusive environment.

74. Such OSU officials showed deliberate indifference towards the safety of the Plaintiff and other male student-athletes and trainers who used the Larkins Hall facility between 1978 to 1998.

75. OSU violated Title IX by failing to remedy the sexually hostile and abusive environment in Larkins Hall.

76. As a direct and proximate result of OSU's violation of Plaintiff's rights under Title IX, Plaintiff has suffered and continues to suffer emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life; were prevented and continue to be prevented from obtaining the full enjoyment of life; and have incurred various personal expenses.

## CLAIM FOR RELIEF COUNT III:
### Violation of Section 1983 (42 U.S.C. § 1983)

77. Plaintiff incorporates by reference the allegations in all previous paragraphs as if fully stated here.

78. Plaintiff enjoys protections under the Fourteenth Amendment of the United States Constitution.

79. Plaintiff enjoys the constitutionally protected Due Process right to be free from invasion of bodily integrity through sexual assault, battery, molestation, and harassment under the Fourteenth Amendment to the United States Constitution.

80. At all times pertinent herein, Ohio State and its employees, agents, and/or representatives were acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs, and usages of the Ohio State University and State of Ohio.

81. The acts as alleged throughout this Complaint demonstrate a violation of these constitutionally protected rights, which were clearly established at the time of the acts and of which OSU had knowledge.

82. OSU had the ultimate responsibility and authority to train and supervise its employees, agents, and representatives, in the appropriate manner if preventing, detecting,

investigating and reporting sexual abuse, assault, and molestation and as a manner of custom, policy, and/or practice failed to do so with deliberate indifference.

83. At all times pertinent herein, OSU acted in a supervisory role to Strauss.

84. By failing to prevent the repeated sexual assaults, abuse, and molestation upon Plaintiff, and by failing to appropriately respond to numerous reports of Strauss' sexual assault, abuse, and molestation in a manner that was clearly unreasonable it amount to deliberate indifference, for which, OSU is liable to Plaintiff pursuant to 42 U.S.C. §1983.

85. OSU is also liable to Plaintiff under 42 U.S.C. § 1983 for maintaining customs, policies, and practices that deprive Plaintiff of rights secured by the Fourteenth Amendment to the United States Constitution in violation of 42 U.S.C. §1983.

86. As a direct and proximate result of OSU's violation of Plaintiff's rights under 42 U.S.C. § 1983, Plaintiff has suffered and continues to suffer emotional distress, physical manifestation of emotional distress, mental anguish, fear, depression, anxiety, trauma, disgrace, embarrassment, shame, humiliation, loss of self-esteem, and loss of enjoyment of life; were prevented and continue to be prevented from obtaining the full enjoyment of life; and have incurred various personal expenses.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff respectfully requests that this Court will:

a. Enter judgment in favor of Plaintiff on his claim for discrimination under Count I- Title IX against Defendant;

b. Enter judgment in favor of Plaintiff on his claim for discrimination under Count II- Title IX against Defendant;

c. Enter judgment in favor of Plaintiff on his claim under Count III- 42 U.S.C. § 1983 against Defendant;

d. Declare Defendant, The Ohio State University's conduct in violation of Title IX of the Education Amendments of 1972;

e. Declare Defendant, The Ohio State University's conduct in violation of 42 U.S.C. § 1983;

f. Award Plaintiff compensatory damages in an amount to be established at trial, including, without limitation, payment of Plaintiff's medical and other expenses incurred as a consequence of the sexual abuse and/or harassment and OSU's deliberate indifference; damages for deprivation of equal access to the educational opportunities and benefits provided by OSU; and damages for past, present, and future, emotional pain and suffering, ongoing mental anguish, loss of past, present, and future enjoyment of life, and loss of future earnings and earning capacity;

g. Award Plaintiff punitive damages in an amount to be determined at trial for OSU's violations of federal law;

h. Award Plaintiff pre-judgment and post-judgment interest;

i. Award Plaintiff their court costs and expenses, including attorney's fees, pursuant to 42 U.S.C. § 1988(b); and

j. Grant such other relief as this Court deems just and proper.

Respectfully submitted,

_____
Bradley Jeckering (0092299)
D. Luke Meenach (0096286)
Jeckering & Associates, LLC
16 S. Main Street
Mechanicsburg, Ohio 43044
P: 937-896-2222
F: 614-515-4905
brad@centralohiolegal.com
luke@centralohiolegal.com
*Counsel for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial on all issues in this Complaint.

_____
Bradley Jeckering (0092299)
D. Luke Meenach (0096286)