**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| MICHAEL DISABATO, et al., | |
| Plaintiffs, | Case No. 2:19-cv-2237 |
| v. | Judge Michael H. Watson |
| THE OHIO STATE UNIVERSITY, | Chief Magistrate Judge Elizabeth P. Deavers |
| Defendant. | |

**UNOPPOSED MOTION TO ESTABLISH 468B QUALIFIED SETTLEMENT FUND**

Plaintiffs, clients of Wright & Schulte, LLC, Jeckering & Associates, LLC, Albers Law Firm, Buckfire & Buckfire, P.C., and Barkan Meizlish DeRose Wentz McInerney Peifer, LLP (collectively, "Claimants' Counsel") hereby seek the Court's approval to establish the WS OSU Qualified Settlement Fund (the "Fund") in accordance with Section 468B of the Internal Revenue Code, and the Treasury Regulations promulgated thereunder.  Plaintiffs also seek appointment of ARX Management, LLC ("ARX") as Fund Administrator of the Fund.  In seeking an Order from this Court pursuant to this Motion, Plaintiffs respectfully state the following:

1. In its April 17, 2020 Order, the Court correctly recognized that the consolidated and related cases "have started to veer into two distinctly separate tracks." *Garrett* Case, Order, Doc. 151 at 1.  "About half of the Plaintiffs have reached a tentative settlement agreement with The Ohio State University." *Id*.  In this regard, on March 6, 2020, Ohio State and Claimants' Counsel, on behalf of all 162 plaintiffs in each of the twelve above-captioned actions reached settlement terms.  In attempting to resolve this matter, Ohio State has done the right thing.

2. The settlement was the result of the October, 2019 mediation conducted in the

1

courthouse, at least five in-person follow-up meetings between plaintiffs' counsel and counsel for Ohio State, and numerous follow-up phone conferences between counsel. The extensive negotiations were necessary because the parties had to agree on structural terms first, and only then move to negotiating the monetary amount of the settlement.

3. After reaching agreement on the structural considerations, the parties negotiated a settlement amount. The claims were settled for a total, collective sum not to exceed $40,913,265.24 (the "Settlement Fund"), plus an additional sum not to exceed $500,000.00 to be used exclusively for payment of the costs required to evaluate claims and administer the settlement program (the "Administration Fund").

4. After March 6, 2020, the unprecedented COVID-19 pandemic took root. Despite the numerous challenges presented by the pandemic, including stay at home orders and limited travel, Claimants' Counsel worked diligently to secure the participation of all 162 plaintiffs in the settlement and to complete the settlement process, including agreeing to extensions of the time within which Claimants' Counsel were permitted to provide signed releases. The efforts were successful and, as a result, ***all 162 plaintiffs*** have signed releases agreeing to participate in the settlement. ***None of the plaintiffs opted out of the settlement.***

5. The COVID-19 pandemic has wreaked havoc on the economy, including with respect to colleges and universities across the nation and in Ohio, including Ohio State. It is public record that Ohio State has been forced to alter the vast majority of its operations; cancel in-person classes and athletics; refund room and board fees; institute hiring freezes; and stop elective surgeries at its medical center. Ohio State also has indicated that it is facing potential cuts in state funding. At the same time, the health emergency has required Ohio State to redirect its resources to its medical center in order to provide access for those currently suffering from COVID-19 or

who may in the future. As a result, Ohio State has suffered and continues to suffer economic repercussions, strained resources, and unknown financial ramifications. If the pandemic continues into the fall and requires alteration of the fall semester and related student and athletic activities, the economic impact on higher education, its current students and its current employees will be far-reaching.

6. The Fund is being established to resolve or satisfy one or more claims that have resulted or may result from injuries and damages sustained by all 162 Settling Claimants pursuing claims asserted under Title IX arising from the conduct of Dr. Richard Strauss ("Claimants").

7. The Fund will receive gross, unallocated proceeds, including attorney fees and expenses, to satisfy claims made by the Claimants.

8. The Fund will remain subject to continuing jurisdiction of this Court and is intended to qualify as a "Qualified Settlement Fund" as defined in *Treas. Reg. Sec. 1.468B-1*.

9. ARX Management, LLC ("ARX") possesses extensive experience administering Qualified Settlement Funds in numerous different causes of action. ARX's address is 1730 Holly Avenue, El Segundo, CA 90245. ARX submits to the jurisdiction of this Court.

10. The Fund, by and through the Fund Administrator, shall be permitted to make payments to the Claimants, Claimants' Counsel, and any entities asserting a claim of subrogation according to the terms of any settlement agreement(s), as well as entities engaged to assist in claims administration and the management of the Fund, including but not limited to the Fund Administrator and Lien Resolution Administrator.

11. The Fund Administrator shall have authority to execute all necessary documents to perform the duties of the Fund Administrator, including but not limited to executing all structured settlement assignment documents and structured attorney fee documents.

12. The claims made by the Claimants are made on account of physical bodily injury and arise out of alleged liability in tort or violation of law. Ohio State denies any and all liability associated with the claims.

13. The gross proceeds paid into the Fund are the sole property of the Fund. No Fund property shall be made available to the Claimants in any fashion, until such time as the Fund Administrator is directed to disburse funds pursuant to a proper distribution request. Until such time as funds are distributed, the Claimants shall not possess any rights to demand or receive any portion of Fund property or to mortgage, pledge, or encumber the same in any manner. To the extent possible, this Motion shall be construed so as to prevent the Claimants from having any actual or constructive receipt of Fund property. Under relevant property laws, no Claimant shall be considered to have constructive receipt or economic benefit or cash equivalency of any property of the Fund while such property is under the control of the Fund Administrator, subject to jurisdiction of this Court and distribution subject to future events and agreements. Furthermore, under Davis v. Commissioner, T.C. Memo 1978-12, the court established that for income to be constructively received, the funds must be made available to the taxpayer without substantial limitation. While under control of the Fund Administrator, the property of the Fund is not unqualifiedly subject to the Claimants' demand or withdrawal.

14. Claimants request that no bond be required, provided that all monies received by the Fund, which include all principal and interest earned thereon, shall be deposited in a custody account held at U.S. Bank (the "Custody Bank"), a financial institution doing business in Minneapolis, MN, with primary custody operations in Cincinnati, OH for the benefit of and titled in the legal name of the Settlement Fund and invested in instruments/securities comprised of (a) United States Agency, Government Sponsored Enterprises or Treasury securities or obligations

(or a mutual fund invested solely in such instruments); (b) cash equivalent securities including SEC registered money market funds and collateralized money market accounts; and/or (c) deposit and similar interest-bearing, or non-interest bearing accounts, and certificates of deposit subject to Federal Depository Insurance Corporation protections as available, which may be held within the custody account or at the issuer bank. The Custody Bank shall follow the instructions of the Fund Administrator and/or its investment advisor pursuant to these terms and conditions, such that the following investment policy is implemented: (1) safety of principal; (2) zero bank balance exposure. Notwithstanding the foregoing, the Custody Bank shall not be allowed to distribute any income or principal from the Settlement Fund except upon instructions of the Fund Administrator, or, if requested, upon the order of this Court upon the joint motion of the parties. The Fund Administrator retains the right to remove the Custody Bank, and may designate a replacement bank, upon the written consent of Claimants' Counsel. In the event of such replacement, the terms and conditions of this Paragraph including, without limitation, those addressing bond requirements, investments, and distributions from the Settlement Fund-shall apply to any such replacement bank. The Fund Administrator shall not be liable for any losses as a result of investing the Deposit as outlined herein and directed by the Court. Any such losses shall not be recoverable from the parties, and the parties and their counsel shall have no responsibility for the Fund Administrator's performance. Receipt and/or investment of any Deposit shall be confirmed to Claimants' Counsel by the Fund Administrator as soon as practicable by account statement or other reasonable method.

15. The Fund Administrator shall be indemnified and held harmless by the Claimants and their attorneys from any claims made by any alleged lien holder, or other person or entity that attempts to assert a right of payment, reimbursement or garnishment against the Settlement

Fund. Should the Fund Administrator be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, and whether brought by or against or otherwise involving the Fund, by reason of the Fund Administrator having served in any capacity on behalf of the Settlement Fund, the Fund Administrator shall be indemnified and held harmless by the Claimants and their attorneys against reasonable expenses, costs and fees (including attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by the Fund Administrator in connection with or resulting from such actual or threatened action, suit or proceeding; except to the extent that it is finally determined by this Court that the Fund Administrator was grossly negligent or acted with willful misconduct in connection with the administration of this Fund.

16. Claimants' Counsel shall be indemnified and held harmless by the Fund Administrator from any claims, which arise from the negligence or willful misconduct of the Fund Administrator as determined by this Court. Should Claimants' Counsel be named as a party to, or threatened to be made a party to, any threatened, pending or completed action, suit or proceeding of any kind, whether civil, administrative or arbitrative, by reason of the Fund Administrator's negligence or willful misconduct, Claimants' Counsel shall be indemnified and held harmless by the Fund Administrator against reasonable expenses, costs and fees (including attorneys' fees), judgment, awards, costs, amounts paid in settlement, and liabilities of all kinds incurred by Claimants' Counsel in connection with or resulting from such actual or threatened action, suit or proceeding.

17. The Fund Administrator shall be authorized to distribute all attorney fees and litigation expenses to Claimants' Counsel, consistent with existing contingency fee contracts and

to the extent required by law.

18. All taxes on the income of the Fund and expenses and costs incurred in connection with the taxation of the Fund (including, without limitation, the expenses of tax attorneys and accountants) shall be paid out of the Fund, shall be considered to be a cost of administration of the settlement, and shall be paid as instructed by the Fund Administrator.

19. Upon request, the Fund Administrator will prepare and deliver Fund Statements ("Statements") to Claimants' Counsel and/or this Court. The Statements shall include a statement of receipts, investment earnings, interest, and disbursements. The Fund Administrator shall provide the Statement no later than ten (10) business days following the request.

20. The Fund Administrator shall have the right to rely upon any affidavit, certificate, letter, notice, electronic mail or other document believed by the Fund Administrator to be genuine and sufficient, and upon any other evidence believed by the Fund Administrator, in its reasonable judgment, to be genuine and sufficient, which may be provided to the Fund Administrator by Claimants' Counsel.

21. Upon final distribution of all monies paid into the Fund, the Fund Administrator shall take appropriate steps to wind down the Fund and thereafter be discharged from any further responsibility with respect to the Fund.

22. The Fund Administrator will obtain a Federal Taxpayer Identification Number for the WS OSU Qualified Settlement Fund.

23. Michael Carpenter, Esq., on behalf of Defendant, has reviewed this Motion and has no opposition.

WHEREFORE, Claimants respectfully request that the Court order the establishment of the WS OSU Qualified Settlement Fund and appoint ARX Management, LLC as Fund Administrator pursuant to this Motion and Treas. Reg. Section 1.468B-1, and issue an Order in the form attached hereto.

Respectfully submitted,

*/s/ Richard W. Schulte*
Richard W. Schulte (0066030)
Wright & Schulte, LLC
865 S. Dixie Dr.
Vandalia, OH 45377
(937) 435-7500
(937) 435-7511 facsimile
rschulte@yourlegalhelp.com

*/s/ Michael L. Wright*
Michael L. Wright (0067698)
Wright & Schulte, LLC
130 W. 2nd Street, Suite 1600
Dayton, OH 45402
(937) 222-7477
(937) 222-7911 facsimile
mwright@yourohiolegalhelp.com

*/s/ Warren N. Sams, III*
Warren N. Sams, III (GA # 624440)
The Sams Law Firm
303 Peachtree St., NE
Suite 4340
Atlanta, GA 30308
(404) 420-0291
(404) 420-0294 facsimile
wsams@samslaw.net

*/s/ Robert J. Lantzy*
Robert J. Lantzy (MI # P57013)
Buckfire & Buckfire, P.C.
29000 Inkster Road
Suite 150
Southfield, MI 48034
(248) 569-4646
(248) 569-6737 facsimile

robert@buckfirelaw.com

*/s/ Sanford A. Meizlish*
Sanford A. Meizlish (0002620)
Barkan Meizlish DeRose Wentz
McInerney Pfeifer, LLP
360 S Grant Avenue
Columbus, OH 43215
(614) 221-4221
(614) 744-2300 facsimile
smeizlish@bnhmlaw.com

*/s/ Bradley Jeckering*
Bradley Jeckering (0092299)
Jeckering & Associates LLC
16 N. Main Street
Mechanicsburg, OH 43044
(937) 896-2222
(614) 515-4905 facsimile
brad@centralohiolegal.com

*/s/ James S. Albers*
James S. Albers (0003388)
Albers Law Firm
88 N. Fifth St.
Columbus, OH 43215
(614) 226-3263
jim@alberslawfirm.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 8th day of May 2020, the foregoing was filed via the ECF/CM system with the Clerk of the Court and served upon counsel of record via email through the Court's ECF/CM system by means of the Notice of Electronic Filing.

*/s/ Richard W. Schulte*